IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARL LEE CALLEGARI,

    Plaintiff,                                  No. CIV S-03-2419 FCD DAD P

    vs.

STEVE CAMBRA, et al.,                            <u>ORDER AND</u>

    Defendants.                                <u>FINDINGS & RECOMMENDATIONS</u>

/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding with Sandra McDonald as the sole defendant. On November 12, 2004, the claims against defendants Hedgpenth, Cambra, Lamarque, Sellers, White, and Herrera were dismissed for failure to state a claim.

        Before the court are plaintiff's motions related to discovery and the cross-motions for summary judgment filed by plaintiff and defendant McDonald.[1]

PLAINTIFF'S CLAIMS

        Liberally construed plaintiff's second amended complaint alleges that from February of 2001 to June 2003, defendant Sandra McDonald, the librarian at Salinas Valley State

---

[1] Plaintiff's motion is styled, "Declaration in support of Plaintiff's Motion for Summary Judgment," and was filed on March 14, 2005 (court document number 27).

1

Prison, retaliated against him because he had named McDonald as a defendant in previously filed lawsuits. The complaint alleges two specific instances of retaliatory conduct on the part of defendant McDonald. First, plaintiff contends that from September 28, 2001 to November 15, 2001, and on May 22, 2003, defendant McDonald refused to allow plaintiff into the library to work on a "lawsuit that is still pending in court!" (2nd Am. Compl. at 4.) Second, plaintiff claims that on February 25, 2003, defendant McDonald wrote a false rule violation report contending that plaintiff had called her a vulgar name. As indicated above, both parties have moved for summary judgment in their favor.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

/////

whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On October 22, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

I. Plaintiff's Arguments

In moving for summary judgment in his favor, plaintiff contends that the issuance of a false rule violation report against him in 2003 and his being denied library access from September 28, 2001 to November 15, 2001, provide conclusive evidence of retaliation against him by defendant McDonald.  Plaintiff asserts that he was subjected to this retaliation because defendant McDonald was named as a defendant in a lawsuit he filed in 2001.

The rule violation in question, issued by defendant McDonald on February 25, 2003, states as follows:

> On 02-25-03, at approximately 0900 hours, Inmate Callegari, (E-42616) knocked on the Library door.  When I opened the door Inmate Callegari asked about making copies.  (Earlier, Correctional Officer S. Hjelden from CS had called to ask about making copies for Inmate Callegari.  I told him that today, 02-25-03 was an odd day, and Inmate Callegari was scheduled for the library on 02-26-03, or a floor Officer could bring Inmate Callegari's copying over, and it would get done.  Officer S. Hjelden last said that he would bring Inmate Callegari's copying over later today.)  I subsequently told Inmate Callegari at my library door that today was an odd building day, the library was full, and if he wanted, he could leave

4

1  |  his copying to be done during the day.  He refused saying, since I
2  |  was named in the copying, he did not want me to handle it.  He
   |  maintained that he should have entry into the library so he could
3  |  oversee the copying by my clerks.  He became disruptive, and
   |  argumentative, at which time I closed the door, and called the
4  |  tower Officer, J. Lopez asking him to contact Correctional Officer
   |  S. Hjeldon, in the hobby shop.  I later saw Officer S. Hjeldon
5  |  speaking with Inmate Callegari outside, and upon opening my
   |  library door to speak with Officer S. Hjeldon when [sic] I heard
   |  Inmate Callegari refer to me as a "cunt", while he was speaking
6  |  with Officer S. Hjeldon.

7  (Pl.'s S.J. Mot., Ex. B at 1.)  Plaintiff testified at the subsequent disciplinary hearing on the

8  charge that he did not call defendant McDonald a "cunt," but did say to Officer Hjelden, "If we

9  fire some of these stupid mother fuckers maybe we'll have more supplies."  (Id., Ex. B at 2.)

10  Officer Hjelden was interviewed and stated that "Inmate Callegari did not refer to LTA

11  McDonald as a 'cunt' or did not say the word 'cunt' at all."  (Id.)  The rule violation was

12  "dismissed in the interest of justice."  (Id., Ex. B at 1.)  Plaintiff argues that the fact that the rule

13  violation charge was dismissed confirms that it was issued by defendant McDonald in an act of

14  retaliation.

15          As for the library access claim, plaintiff argues that there was no legitimate basis

16  for defendant McDonald to deny plaintiff library access for seventeen days in 2001 and that this

17  was also an act of retaliation.  To support his contention, plaintiff has submitted a copy of his

18  inmate appeal form and the favorable decision at the first level, dated December 3, 2001.  (Id.,

19  Ex. A.)  In his inmate appeal plaintiff alleged as follows:

20  |  Captain A. Hedgpenth, C-yard is your yard[.]  Well from Feb of
    |  this year the Law Librarian Mcdonald have been harassing and
21  |  retaliate against me for filing a law suit.  Now that Mcdonald know
    |  that I [sic] have file[d] a law suit against her Mcdonald refuse to let
22  |  me in the Library and have her co-worker write a false 115 on me.
    |  [T]he title 15 state [sic] 3160 inmate access to courts shall not be
23  |  obstructed and staff shall not in any way retaliate against me for
    |  filing a law suit!
24

25  (Id., Ex. A, Appeal Form, at 1.)  This inmate appeal was granted at the first level with the

26  following finding being made:

5

> Access to the library has been provided on November 16, 2001 as indicated in the interview on November 15, 2001. In addition, the appellant has received access to the library since that date. No retaliation has or will be take[n] against appellant for filing his appeal or any law suit by any persons.

(Id., Ex. A, Memorandum, dated Dec. 3, 2001, at 2.)

Plaintiff advances additional arguments relevant to the cross-motions for summary judgment motion in a document styled, "Rule 11 Plaintiff Notice for a motion for sanction," filed on May 2, 2005.[2] Therein, plaintiff contends that defendant McDonald is "misrepresenting" facts and "forging documents" concerning his access to the library from September 28, 2001 to November 15, 2001. (Mot. for Sanction at 1.) Plaintiff asserts that his library use was never properly suspended. In this regard, he has submitted a copy of a November 15, 2001 memorandum directed to plaintiff from prison official Don Chesterman on behalf of the Chief Deputy Warden. (Id.) That memorandum responds to plaintiff's correspondence regarding his lack of access to the law library. Mr. Chesterman writes that plaintiff's law library access is restored and that in the future, "no inmate will have access restricted without the written approval of the Chief Deputy Warden." (Id., Attach. at 1.) As for defendant McDonald's assertion that she was unaware of a lawsuit brought against her until 2003, plaintiff contends that in 2001, he told defendant McDonald that he "was going to file a lawsuit on her!" (Id. at 2.) Plaintiff further contends that he filed a civil rights action on July 12, 2001 with the U.S. District Court for the Eastern District of California in case number CIV S-01-0566 FCD GGH P[3] and that on September 30, 2002, the court ordered plaintiff to make copies of his complaint for service on defendant McDonald.[4] (Id.)

---

[2] Plaintiff requests that sanctions be imposed to "stop the defendant from cheating and telling lie[s]!" (Mot. for Sanctions at 3.) The motion will be denied.

[3] On March 29, 2003, the case was referred to Magistrate Judge Kimberly J. Mueller.

[4] Court records indicate that CIV S-01-0566 FCD KJM P was filed on March 21, 2001 and on July 12, 2001, plaintiff filed an amended complaint. On September 30, 2002, the court determined that service was appropriate with respect to twelve defendants, including defendant

Plaintiff did not file opposition to defendant's summary judgment motion. However, on June 20, 2005, he did file a document styled, "Plaintiff's Request For Production of Documents" which the court has construed as plaintiff's opposition to the motion.[5] Therein, plaintiff contends that defendant's motion for summary judgment is based on the assertion that his library privileges were suspended as a result of a rule violation. Plaintiff repeats his argument that in fact there was no formal suspension of his privileges and that defendant cannot produce a copy of any such suspension order. Plaintiff has submitted his own declaration in which he contends that defendant McDonald was aware of his litigation activities because in 2001 plaintiff submitted inmate grievances concerning her.[6] (Req. for Product., Attach. Decl. of Pl. at 2.) Those inmate grievances are also attached to plaintiff's second amended complaint. (Id.)

II. Defendant's Arguments

In her opposition to plaintiff's motion for summary judgement, defendant McDonald argues that the fact the 2003 rule violation report was not sustained does not indicate that the charges were false or that her report was prepared without good cause. (Def.'s Mem. at 7.) Defendant McDonald contends that the 2003 rule violation report was issued based on

---

McDonald, and plaintiff was ordered to submit copies of his amended complaint which would be served on the defendants. On November 7, 2002, the court ordered the U.S. Marshal to serve process on defendants and on December 23, 2002 a waiver of service for defendant McDonald was filed. Defendants filed a motion to dismiss for failure to exhaust administrative remedies on January 15, 2003. The motion was granted on September 30, 2003, and the case was dismissed as to most of the named defendants, including defendant McDonald. The remaining defendants filed a motion for summary judgment which was granted on March 30, 2005. Plaintiff's appeal remains pending before the United States Court of Appeals for the Ninth Circuit.

[5] Plaintiff's discovery request is that defendant McDonald produce a copy of the document authorizing the temporary suspension of plaintiff's law library privileges. On July 27, 2005, plaintiff renewed his request for a copy of the suspension order. The requests will be denied. Discovery requests must be made directly to the opposing party. The court does not take action until such time as a party becomes dissatisfied with a response to a discovery request and seeks relief from the court pursuant to the Federal Rules of Civil Procedure. In addition, plaintiff's discovery requests are more akin to argument. Put simply, plaintiff contends that there was no formal suspension order and to prove his point he has demanded that if such an order exists it be produced by defendant McDonald.

[6] Plaintiff's declaration is not signed under penalty of perjury.

plaintiff's disruptive conduct after he was told to return to the library at his scheduled time and on the fact that plaintiff had to be escorted from the library. (Id. at 3 n.3.) Although the hearing officer did not find plaintiff guilty of using vulgar language, defendant McDonald argues that disciplinary action was appropriate based on plaintiff's obstinate behavior and the penological interest of maintaining discipline within the prison. (Id. at 7.) Finally, defendant McDonald asserts that because the rule violation charge was dismissed plaintiff did not suffer any actual harm. (Id.)

As to the library access claim, defendant McDonald contends that plaintiff in fact used the library several times in 2001. Relying on the library's preferred legal user log book, she asserts that plaintiff had access to the library on September 18, 20, 26, 28; October 2; November 17 and 21 in 2001. (Def.'s Decl. ¶ 5 at 2.) For the time period between September 28, 2001 and November 15, 2001, defendant McDonald contends that she believed that plaintiff's physical access to the library was temporarily suspended based on a rule violation report issued by librarian Kathy Lynch. (Id. ¶ 9 at 2; Ex. C at 1.) In that rule violation, dated September 28, 2001, Ms. Lynch reported that plaintiff addressed her as "miss cutie" even after he was warned that he must use her correct name. (Id., Ex. C at 1.) As a result, Lynch requested that plaintiff's library privileges be suspended and that he be placed on "paging only." (Id.) Defendant McDonald argues that plaintiff was provided ample access to the library, that any denial of such access was due to plaintiff's behavior and that plaintiff has not shown he suffered any actual injury as a result of the denial of access to the library. In response to any claim of retaliation in 2001, defendant McDonald also contends that until January 2003, she was unaware that plaintiff had named her as a defendant in any lawsuit. (Id. ¶ 10 at 3.)

In her motion seeking summary judgment in her favor, defendant McDonald argues that plaintiff has failed to produce any evidence in support of critical elements of his retaliation claims. Defendant also argues that plaintiff's assumption that he has suffered retaliation because he does not like how he was treated, is nothing more than speculation that

defendant must have acted with a retaliatory motive. (Def.'s Mot. Summ. J. at 7-8.) In this regard, defendant McDonald relies on the same evidence she submitted to oppose plaintiff's summary judgment motion including: (1) log book entries showing the dates plaintiff accessed the library in 2001; (2) the September 28, 2001 rule violation report for "over familiarity" which recommended that plaintiff's library access be temporarily suspended; and (3) her own declaration signed under penalty of perjury.

In moving for summary judgment in her favor with respect to plaintiff's claim that he was denied library access in retaliation, defendant McDonald argues that plaintiff has failed to produce evidence that he was actually denied access to the library during the disputed time period. (Def.'s Mot. Summ J. at 4-5.) She contends that between February 2001 and December 2001, plaintiff used the library on at least 33 separate occasions and that any limitation placed upon plaintiff's library access from September 28, 2001 to November 15, 2001, was imposed due to plaintiff's disrespectful behavior towards library staff. (Id. at 5.) Even assuming that plaintiff's library access was restricted, defendant McDonald argues that plaintiff has not shown that he suffered any actual injury as required by the Supreme Court's decision in Lewis v. Casey, 518 U.S. 343, 349-50 (1996). (Id. at 5-6.) Finally, defendant McDonald argues that plaintiff has not shown a retaliatory motive on her part and repeats her argument that since she was unaware of plaintiff's legal proceedings against her until she was served on January 17, 2003, she could not possibly have had a retaliatory motive based upon that lawsuit prior to that date. (Id. at 6-7.)

In moving for summary judgment in her favor with respect to the allegedly retaliatory rule violation report issued in 2003, defendant McDonald argues that plaintiff has failed to come forward with evidence satisfying any of the elements of a retaliation claim. (Id. at 7.) She again contends that the fact that the disciplinary charges against plaintiff were dismissed does not establish that those charges were false or that her rule violation report was prepared without good cause. (Id.) Finally, she repeats her contention that because the rule violation charge was dismissed plaintiff suffered no actionable harm. (Id.)

9

III. <u>Analysis</u>

Retaliation by a state actor for a prisoner's exercise of a constitutional right is actionable under § 1983 even if the acts would have been proper if undertaken for different reasons. <u>Mt. Healthy City Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283-84 (1977). To prevail on a retaliation claim, a prisoner must prove that he was retaliated against for exercising a constitutional right and that retaliation was a substantial or motivating factor for the defendant's acts or conduct. 429 U.S. at 285-87; <u>see</u> <u>also</u> <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314-16 (9th Cir. 1989). The prisoner must also show that the defendant's retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995); <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985). Thus, prisoners may not be retaliated against for exercising their First Amendment right of access to the courts or their broader right to petition the government for redress of grievances. <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995); <u>Schroeder v. McDonald</u>, 55 F.3d 454, 461 (9th Cir. 1995); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138 (9th Cir. 1989). A viable claim of retaliation in this context also requires that the adverse action chill or harm the inmate's exercise of his First Amendment rights. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005). However, a prisoner's exercise of his First Amendment rights can be chilled even when not completely silenced. <u>Id.</u> at 568-69. Rather, the proper inquiry is whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. <u>Id.</u> (citing <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999))[7].

---

[7] Accordingly, within the prison context, "a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) (citing <u>Resnick v. Hayes</u>, 213 F.3d 443, 449 (9th Cir. 2000); <u>Barnett v. Centoni</u>, 31 F.3d 813, 815-16 (9th Cir. 1994).

Since plaintiff would bear the burden of proof at trial on his claims, in order to prevail on his motion for summary judgment, plaintiff must demonstrate that there are no disputed facts with respect to each of the essential elements of his retaliation claim and that he is entitled to judgment in his favor as a matter of law. <u>Celotex Corp.</u>, 477 U.S. at 323. In order to defeat defendant's motion for summary judgment plaintiff must make a showing sufficient to establish the existence of each element essential to his case. <u>Id.</u> at 322. Plaintiff has failed to make the required showings.[8]

### A. The 2003 Rule Violation Charge

As noted above, plaintiff claims that defendant McDonald issued a false disciplinary charge against him in retaliation for his naming of defendant McDonald in a civil rights lawsuit. It appears undisputed that defendant McDonald took an adverse action against plaintiff by filing the rule violation report in 2003. On the next essential element of his claim, however, plaintiff has failed to point to any evidence suggesting the required link between his protected conduct and the alleged retaliatory act. Plaintiff must point to such evidence in the record to defeat defendant's motion for summary judgment. See <u>Pratt</u>, 65 F.3d at 806-07 (concluding that the record contained no evidence establishing the crucial link between the prisoner's actions and the alleged retaliation). Instead, in attempting to establish the required link plaintiff relies solely on the fact that the disciplinary charge was eventually dismissed and that defendant McDonald knew of plaintiff's lawsuit naming her as a defendant when she issued the rule violation report in 2003.

Of course, the mere fact that defendant McDonald was aware of plaintiff's lawsuit naming her prior to the issuance of the rule violation, is not enough to demonstrate retaliatory motive or to create a genuine issue of material fact on the question of whether McDonald's

---

[8] In order to defeat defendant's summary judgment motion, plaintiff cannot rely on allegations or denials in his pleadings, but must tender evidence of specific facts in the form of affidavits or other admissible discovery material to demonstrate that a dispute exists. <u>Matsushita</u>, 475 U.S. at 586 n.11.

bringing of the disciplinary charge was motivated by plaintiff's lawsuit.  See Keyser v. Sacramento City Unified School Dist., 265 F.3d 741, 751 (9th Cir. 2001) (more than a defendant's mere knowledge of a plaintiff's exercise of protected conduct is required to create a genuine issue of material fact on the retaliatory motive element).  Plaintiff has not presented evidence of any statements made, or other actions taken, by defendant McDonald after she learned of the lawsuit which would support an inference of a retaliatory motive.  Indeed, defendant McDonald has submitted a declaration in which she states that the rule violation was issued because of plaintiff's conduct when he was told to return to the library at his scheduled time and because she in good faith believed that plaintiff had referred to her using derogatory language.  She also declares that she believed the rule violation report was appropriately issued and that her decision to file the report was not influenced by any lawsuit that plaintiff may have filed against her.  Moreover, the decision issued after the disciplinary hearing reflected no suggestion that defendant McDonald had misused the disciplinary process or had acted improperly in filing the report.  Rather, the dismissal of the charge "in the interest of justice," was a narrow ruling, addressing only the use of vulgar language allegation.  Plaintiff has simply offered no evidence raising a genuine issue of material fact as to defendant McDonald's alleged retaliatory motive.  Summary judgment in favor of defendant McDonald due to plaintiff's failure of proof on this element alone is appropriate.[9]

/////

---

[9] Defendant McDonald also declares that she issued the 2003 rule violation report because of plaintiff's disruptive conduct.  On this basis she argues that plaintiff has also failed to establish that her act of filing the rule violation report did not reasonably advance a legitimate penological goal.  A prisoner opposing summary judgment on a retaliation claim must submit evidence establishing the absence of legitimate correctional goals for the challenged conduct. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995).  In analyzing prison officials' proffered reasons for the allegedly retaliatory conduct, "we should afford appropriate deference and flexibility to prison officials." Id.  Plaintiff suggests that the fact the disciplinary charge was dismissed is strong evidence that there was no legitimate penological basis for issuing the violation report.  In light of plaintiff's failure of proof linking his protected conduct and the alleged retaliation, the court need not resolve this issue.

For the reasons set forth above, plaintiff's motion for summary judgment on his retaliatory disciplinary charge claim should be denied and defendant McDonald's motion for summary judgment in her favor on this claim should be granted.

B.  Denial of Library Access

As for the denial of library access claim, the court will assume for the sake of argument that an adverse action was taken against plaintiff.[10] Again, however, on the next essential element of his claim plaintiff has failed to point to any evidence establishing the link between his protected conduct and the alleged retaliatory act. In support of his claim that he was denied access to the library from September 28, 2001 through November 15, 2001 in retaliation for his litigation activities, plaintiff merely argues that because defendant McDonald's action was unauthorized and she was aware that plaintiff had filed a lawsuit against her, she must have acted with a retaliatory motive. This is insufficient.

Even if defendant McDonald was aware of plaintiff's lawsuit naming her as a defendant prior to the issuance of the rule violation,[11] that is not enough to demonstrate retaliatory motive or to create a genuine issue of material fact on the question of whether defendant McDonald denied plaintiff access to the library and was motivated by plaintiff's protected activity in doing so. See Keyser, 265 F.3d at 751. Plaintiff has not presented evidence of any statements made or other actions taken by defendant McDonald after she learned of his

---

[10] Defendant McDonald disputes this point to some extent. Plaintiff responds that any suspension of such privileges was improper since it was not approved by the Chief Deputy Warden. Defendant McDonald counters that in good faith she believed that a suspension was in effect following the issuance of the rule violation report by librarian Lynch and she submits that rule violation report to the court. Whether the suspension of plaintiff's library privileges was imposed pursuant to proper procedures or was consistently enforced, it would still appear that some adverse action related to library access was taken against plaintiff following the incident involving librarian Lynch.

[11] Defendant McDonald has submitted a declaration stating that she was unaware that plaintiff had named her as a defendant in a lawsuit until January of 2003, long after the period plaintiff claims he was denied library access. The court's records provide some support for defendant McDonald's position that she did not have actual knowledge of plaintiff's lawsuit at the time plaintiff was allegedly denied library access in 2001. See fn. 4, supra.

lawsuit which would support an inference of a retaliatory motive. As noted, defendant McDonald has submitted an affidavit under penalty of perjury stating that it was her understanding that plaintiff's library access was suspended following a rule violation report issued by library assistant Kathy Lynch. Ms. Lynch recommended that plaintiff's access to the library be suspended after he repeatedly addressed her as "miss cutie," violating prison rules with respect to "over familiarity." (Def.'s Decl. in Support of Def.'s Mot. for Summ. J., Ex. C at 1.) Although plaintiff argues that any suspension of his library privileges was invalid because it was not authorized by the Chief Deputy Warden, he has provided no evidence disputing defendant McDonald's assertion that she believed his library access was suspended based on the rule violation report.

Therefore, the court will recommend that as to plaintiff's retaliation claim based on the denial of library access, plaintiff's motion for summary judgment be denied and defendant McDonald's motion for summary judgment in her favor be granted.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's May 2, 2005 motion for sanctions is denied;

2. Plaintiff's June 20, 2005 request for the production of documents is denied; and

3. Plaintiff's July 27, 2005 motion to compel discovery is denied.

Also, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment, filed on March 14, 2005, be denied;

2. Defendant's motion for summary judgment, filed on June 2, 2005, be granted; and

3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 2, 2006.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
calle2419.57